FOURNET, Chief Justice.
The defendant, Louisiana Public Service Commission, is appealing from a judgment of the District Court decreeing the nullity of its Order No. 6475 of March 25, 1954,, and permanently enjoining the enforcement of said Order, by which the Commission had commanded the Gulf, Mobile & Ohio Railroad Company, plaintiff herein, to immediately resume the operation of passenger trains Nos. 1 and 2 between Slidell, Louisiana, and New Orleans, and to continue such operation pending the further order of the Commission.
For many years the plaintiff has been operating the passenger trains in question, known as the “Little Rebel,” one northbound and one southbound daily between Jackson, Tennessee, and New Orleans, via Jackson, Mississippi. The plaintiff’s line terminates, at North Slidell, Louisiana; between Slidell and New Orleans its operations were carried on under two separate trackage and' facility agreements, each for a term of 4S years, made in 1932 by its predecessor, one being with the New Orleans & Northeastern: Railroad, granting the right to use the tracks and facilities of that line for freight and passenger service from Slidell to Terminal Junction in the outskirts of New Orleans, the other being with the New Orleans: Terminal Company, granting the right to *955 use its tracks for passenger, mail and express, from Terminal Junction into its station on Canal Street. The latter contract reserved to the New Orleans Terminal the right to terminate the agreement in the event an abandonment of its Canal Street passenger station facilities should become necessary.
In October, 1947, a contract for the construction and operation of a Union Passenger Terminal in New Orleans was entered into between the City and the several railroad companies then maintaining passenger service into New Orleans, including the plaintiff. This project was the culmination of a long-standing plan to consolidate the passenger facilities in one terminal, and to require all passenger-carrying railroads serving New Orleans to use such terminal to the exclusion of the five separate passenger stations then serving the public. Following approval by the Interstate Commerce Commission (New Orleans Passenger Terminal Case, Finance Docket No. 15920, 267 I.C.C. 763), and to a limited extent by the Louisiana Public Service Commission (Order No. 4865 dated June 1, 1948, rendered in the proceeding entitled City of New Orleans, et al, Ex Parte, docket No. 4944), the work of grade-crossing elimination, acquisition of land, construction and/or relocation of certain tracks and abandonment of others progressed, and- in due course the Union Passenger Terminal neared completion. The opening date was fixed for April 1, 1954.
Meanwhile, on February 20, 1954, the plaintiff filed its application with the Louisiana Public Service Commission for authority to discontinue its passenger trains Nos. 1 and 2 between the Louisiana-Mississippi state line and Slidell, Louisiana, by reason of alleged prolonged operation at substantial losses; the petition also states, though no approval is sought in this connection, that “Petitioner does not consider it practical longer to continue use of the properties of other carriers under contractual arrangements beyond the southern terminus of its own line in providing this service.” The operation of the trains through the State of Mississippi was discontinued on February 22, 1954 (without authority from the Mississippi Public Service Commission, though such authority was granted by that body at a later date); and on March 8,1954, the railroad advised the defendant Commission by telegram, “as information,” that the operation of its passenger trains Nos. 1 and 2 was discontinued on that date south of Slidell over tracks of New Orleans & Northeastern, and the New Orleans Terminal Company, and special connecting Teche Greyhound bus service was being provided from train-side at Slidell to and from New Orleans on the train schedule.[1]
*957 The Louisiana Public Service Commission ordered the railroad company to show cause, on March 25, 1954, why the service should not be immediately reinstated between Slidell and New Orleans; in that proceeding the Commission also cited New Orleans & Northeastern and the New Orleans Terminal Company. The plaintiff railroad excepted to the jurisdiction of the Commission on the ground that it owned no tracks between Slidell and New Orleans, and that reinstatement of the trains between those points would involve the continuance and/or renegotiation, prior to April 1, 1954, of trackage rights contracts[2] in respect to which the Interstate Commerce Commission was vested with sole and exclusive jurisdiction. The other two railroads filed similar exceptions, which were maintained;[3] the plaintiff railroad’s exception, however, was overruled, and it was ordered to resume the operation of its passenger trains Nos. 1 and 2 between Slidell and New Orleans not later than March 27, 1954, and to continue such operation pending the further order of the Commission.
The plaintiff immediately sought an injunction in the Federal Court to restrain *959 ■enforcement of the Commission’s Order on the ground of want of jurisdiction. A three-judge Federal Court, after considering the matter, refused to exercise jurisdiction in view of its conclusion that the Louisiana Public Service Commission had authority to render its Order of March 25, 1954, and the law of Louisiana provides for an adequate review by State courts of that Order. In disposing of plaintiff’s contention that the Interstate Commerce Commission had exclusive authority in the premises, the Federal Court pointed out that since the railroad planned to continue the use of trackage rights with the New Orleans & Northeastern for movement of freight traffic from Slidell to Terminal Junction, that contract was not affected, and there was “abandonment” only of the four and a half miles of line between Terminal Junction and the Canal Street station; and while the Interstate Commerce Commission is vested with exclusive authority (under Section 1(18-20) of the Interstate Commerce Act, 49 U.S. C.A. § 1 (18-20)), in the case of abandonment of a line of railroad by a carrier, “It ■comes in very poor grace from this railroad to champion the jurisdiction of the Interstate Commerce Commission while flouting its authority by actually abandoning its operation on a portion of a line without having first obtained a certificate so to do from the Commission as required by law.” However, the Court based its ruling squarely on legal grounds, holding that in contemplation of law there had been no abandonment of any portion of the line and “Consequently, the Louisiana Public Service Commission was justified in disregarding the railroad’s abortive attempt to abandon the line between Terminal Junction and the Canal Street Station in determining its jurisdiction to require the railroad to restore the service between Slidell and New Orleans,” a local service between points within the jurisdiction of the Commission. Judgment was rendered on April 9, 1954, D.C., 120 F.Supp. 250, 253.
It appears that because of delay, the new Union Passenger Terminal had not commenced operation on April 1, as planned, and service there had been postponed until April 16, 1954; on April 13 the plaintiff filed the present suit in the District Court of this State, and secured an order against the Commission, temporarily restraining enforcement of its Order of March 25. The defendant Commission, and the City of Bogalusa which intervened as a party in interest, filed motions to dissolve, which were overruled, and following trial there was judgment for the plaintiff, as stated above. The defendant Commission and the City of Bogalusa have joined in prosecuting this appeal. The plaintiff has filed a motion to dismiss the appeal, attaching thereto the official findings and proposed report of the Examiner for the Interstate Commerce Commission, to which body the plaintiff made application during the course of these proceedings. It is the plaintiff’s contention that mere acceptance of jurisdiction by the Interstate Commerce Commission is suffi *961 dent to render the case moot before this Court.
Clearly, until the abandonment of the Canal Street Station on April 16, 1954, the Louisiana Public Service Commission had jurisdiction over the question of discontinuance of plaintiff’s passenger trains within the boundaries of this State, Palmer v. Commonwealth of Massachusetts, 308 U.S. 79, 60 S.Ct. 34, 84 L.Ed. 93, and we find that the railroad is to be censured for having discontinued its service without permission from any authority, and in total disregard of Rule 18-A of the Louisiana Public Service Commission requiring consent of that body before passenger trains operated in this State are discontinued, and without reason why it could not continue to perform the service in question until the opening of the new Passenger Terminal. It follows that the District Court’s restraining order of April 13, 1954, was ill-advised. However, under circumstances existing on the date the District Court overruled the motions to dissolve the restraining order (April 26) and the date of the Court’s final judgment (May 26), and continuously since the opening of the new Passenger Terminal (April 16), the plaintiff has had no contract covering trackage rights to bring its trains from Terminal Junction into the station, and has not desired to enter into such an agreement due to claimed financial losses. The New Orleans Terminal Company will not permit the use of its tracks to reach the station in the absence of an executed contract. The Commission is therefore powerless to issue an enforceable order for resumption of the service. There is the further consideration that the plaintiff has filed with the Interstate Commerce Commission an application for authority to abandon the operation formerly conducted over the tracks of the New Orleans Terminal Company, and the Interstate Commerce Commission has the matter under consideration. That Commission has exclusive jurisdiction over abandonment of such operation by a carrier, under Section 1(18) of the Interstate Commerce Act, as amended, 49 U.S. C.A. § 1(18). The action of the lower court will therefore not be disturbed.
For the reasons assigned, the judgment is affirmed.

. This arrangement was approved by the Commission on the following day (March 9th) to the extent that the railroad was authorized to assess passenger fares for the joint train-bus trip at a price no higher than its published rail fare between points within this State; but it was specified that “The issuance of this au *957 thority does not in any wise constitute approval by the Commission of the action of the Gulf, Mobile and Ohio Railroad Company in discontinuing its Passenger Trains Nos. 1 and 2, between Slidell and New Orleans; and the permission herein contained is granted without prejudice to the Commission’s ultimate disposition of the application of the Gulf, Mobile & Ohio Railroad Company, in the Commission’s Docket No. 6515, for authority to discontinue its Passenger Trains Nos. 1 and 2 (The Rebel) within the State of Louisiana.”

. The record shows that the Union Passenger Terminal Contract of Octpber, 1947, contains the provision: “New Orleans Terminal Company agrees to enter into agreements with those Carriers which are to use the Union Passenger Terminal, which may desire such privilege insofar as passenger service is concerned, * * * such agreements to become effective upon the expiration of present agreements which permit use for passenger service * * * the Gulf, Mobile & Ohio Railroad Company will be permitted to use the Outer Belt for passenger service upon the same terms * * * as other passenger users * * (Section 70 A) It is further shown that on February 4, 1954, at a meeting of the representatives of plaintiff railroad and New Orleans Terminal Company, the terms of a new contract were agreed upon and later that month a draft of the agreement was submitted to the plaintiff for execution, with the statement that “The NOT Company will not permit use of its tracks to reach the new station in the absence of an executed contract.” On March 7 the plaintiff advised that “circumstances have made it necessary that we withdraw this service as promptly as possible. * * * We have, therefore, set up plans whereby our Little Rebel will operate no farther south than Slidell, Louisiana, effective Monday, March 8th.”

. While these exceptions to the jurisdiction were maintained, it appears that the reason for such ruling was that the two railroads showed themselves ready and willing to perform in accordance with their respective contracts with the plaintiff, duly approved by the Interstate Commerce Commission long years before; and although the agreement with New Orleans Terminal would expire shortly under its terms, a new contract had been offered by that company to the plaintiff railroad.